UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOSEPH GARROW,

    Plaintiff,

v.                                        CASE NO. 5:19-cv-586-Oc-18JBT

ANDREW M. SAUL,
Commissioner of the
Social Security Administration,

    Defendant.
_____/

# REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the undersigned on Plaintiff's appeal of an administrative decision denying his application for a Period of Disability and Disability Insurance Benefits. In a decision dated November 7, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 6, 2015, the alleged disability onset date, through the date of decision. (Tr. 17–29.) Plaintiff has

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

exhausted his available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the memoranda, and the applicable law. For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

**I.     Issues on Appeal**

Plaintiff makes the following arguments on appeal:

1. Whether the Administrative Law Judge ("ALJ") erred in rejecting the opinions of examining psychologist Dr. Alfred Vonetes based on unspecified "internal inconsistencies" in those opinions, given that no relevant inconsistencies are evident, Dr. Vonetes' opinions appear internally consistent, and his notes correspond to limitations in the mental residual functional capacity evaluation completed by Dr. Vonetes which is also consistent with observations by treating source Dr. Christine Grissom.

2. Whether the ALJ erred in citing only jobs with a Specific Vocational Preparation ("SVP") 2 rating meaning that they can be learned in anything beyond short demonstration up to and including 1 month whereas the Social Security Administration advised Plaintiff he could perform work which requires only a short, on-the-job training period which equates to SVP 1.

3. Whether the job numbers provided by the vocational expert ("VE") constituted substantial evidence of the existence of jobs complying with the residual functional capacity ("RFC") in significant numbers in the national economy given that the VE testified she relied upon Job Browser Pro and data provided by Job Browser Pro differ dramatically from the numbers to which the VE testified.

4. Whether the ALJ improperly failed to include in the residual functional capacity a restriction against high performance/high demand work environments, given that State agency psychological consultant Kathryn Bell, to

>  whose opinion the ALJ gave great weight, stated Plaintiff would be limited in his ability to maintain concentration, persistence, and pace under stresses of such high performance/high demand work environments due to apparent difficulty with stress tolerance and intermittent symptom interruptions.

> 5. Whether the ALJ erred in finding Plaintiff could perform the jobs of mail room clerk, routing clerk, and package sorter given that all three jobs require the ability to carry out at least detailed instructions whereas the residual functional capacity limited Plaintiff to simple, routine, and repetitive tasks and the ALJ did not resolve apparent conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles [("DOT")].

(Doc. 21 at 1–2.)

## II.   Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

3

### III.     The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairments of:

> [A]n anxiety disorder, a mood disorder, attention deficit hyperactivity disorder (ADHD), conditions of the lumbar, thoracic, and cervical spine, chronic obstructive pulmonary disease (COPD), and obesity (20 CFR 404.1520(c)).

(Tr. 19.)[2]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing.  (Tr. 20–22.) Prior to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except with the following limitations:

> [H]e can have only occasional exposure to airborne irritants such as fumes, odors, dust, gases, and poorly ventilated areas; is limited to the performance of simple, routine, and repetitive tasks; and can have only occasional interaction with the public and coworkers.

(Tr. 22–23.)

At step four, the ALJ found that Plaintiff could not perform any past relevant work.  (Tr. 27–28.)  At step five, the ALJ found that considering Plaintiff's age (39 years old on the alleged disability onset date), education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 28–29.)  Therefore, Plaintiff was not disabled.  (Tr. 29.)

---

[2] The sequential evaluation process is described in the ALJ's decision.  (Tr. 18–19.)

4

**IV.     Analysis**

**A.     Dr. Vonetes' Opinions**

Plaintiff first argues that the ALJ erred in giving little weight to the opinions of Dr. Alfred D. Vonetes, an examining psychologist. (Doc. 21 at 14–19.) In order to discount the opinions of Dr. Vonetes, the ALJ had to provide adequate reasons supported by substantial evidence. *See McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 924 (11th Cir. 2006) (finding no reversible error "[b]ecause the ALJ gave specific reasons for according no weight to [an examining physician's] opinion, and because the ALJ based his decision on substantial medical evidence").[3]

In discussing Dr. Vonetes' opinions, the ALJ stated:

> Little weight is given to the reports of the . . . psychiatric evaluation ordered by the claimant's representative (Exhibit 3F; Exhibit 18F). . . . The psychiatric evaluator, meanwhile, provided conflicting ratings of the claimant's degree of impairment in a number of vocationally relevant areas of functioning.  The evaluator's statement that the claimant "has been totally disabled from substantial gainful work" is an ultimate conclusion reserved by law for the determination of the Commissioner of Social Security.  Due to the internal inconsistencies, the evaluator's opinion is unpersuasive.

(Tr. 27.)[4]

---

[3] Although unpublished Eleventh Circuit decisions are not binding precedent, they may be persuasive authority on a particular point. *See, e.g., Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

[4] The ALJ also noted that Dr. Vonetes was the "only examining or treating source

The undersigned recommends that the ALJ provided adequate reasons supported by substantial evidence for giving little weight to the opinions of Dr. Vonetes. The "internal inconsistencies" noted by the ALJ were based on Dr. Vonetes providing "conflicting ratings of the claimant's degree of impairment in a number of vocationally relevant areas of functioning." (Tr. 27.) Specifically, it is apparent that the ALJ was referencing check-mark forms that Dr. Vonetes filled out regarding whether Plaintiff had limitations of function in his ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. (Tr. 789, 791, 793.) Thus, the ALJ's decision allows for meaningful review. *See Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.") (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984))

On two forms, Dr. Vonetes indicated that Plaintiff had moderate limitations in all four areas. (Tr. 789, 793.) However, on another form, which was completed on the same day as the others, Dr. Vonetes indicated that Plaintiff had mild limitations in his ability to understand, remember, or apply information, and marked

---

who diagnosed a panic disorder." (Tr. 25.) This diagnosis was based on Plaintiff's statement to Dr. Vonetes that he had panic attacks two to three times per week, which was not reflected anywhere else in the medical records. (*Id.*)

6

limitations in his ability to interact with others. (Tr. 791.)[5] Moreover, although Dr. Vonetes indicated on all three forms that Plaintiff had moderate limitations in his ability to concentrate, persist, or maintain pace, another form he filled out indicated that Plaintiff had extreme limitations in the ability to maintain attention and concentration for extended periods, the ability to work in coordination or proximity to others without being distracted by them, and the ability to complete a normal workday or week without interruptions from symptoms. (Tr. 795–96.) The undersigned recommends that these inconsistencies provide substantial evidence supporting the ALJ giving little weight to Dr. Vonetes' opinions. *See Washington v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 871, 875–76 (11th Cir. 2019) (holding that the ALJ was entitled to give less than considerable weight to a treating physician's opinions due to internal inconsistencies). Accordingly, the undersigned recommends that the Court reject this argument.

### B.   SVP Rating

Next, Plaintiff argues that the ALJ erred in finding that he could perform jobs with SVP ratings of 2 because the SSA previously advised Plaintiff, as part of the initial and rehearing denials of his claim, that he "should be capable of performing other work which requires only a short, on-the-job training period." (Doc. 21 at 19–

---

[5] Although each of these three forms concerned different mental disorders, the four areas of mental functioning are the same. (Tr. 789–94.) Thus, the ALJ could reasonably conclude that the opinions of Dr. Vonetes were inconsistent.

20.)  Plaintiff argues that this restriction required the ALJ to limit Plaintiff to jobs that had an SVP rating of 1.[6]

The undersigned recommends that this argument is without merit for a number of reasons.  First, Plaintiff cites no authority for the proposition that an ALJ is bound by initial and rehearing explanations, and the undersigned is aware of no such authority.  On the contrary, the undersigned recommends that the ALJ was not so bound.  *See Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008) ("[T]he ALJ has the ultimate responsibility to assess a claimant's residual functional capacity.").  Moreover, these explanations were based on a limited number of medical records, with the last one dated April 15, 2016, rather than the full administrative record available to the ALJ.  (*See* Tr. 97, 98.)  Additionally, Plaintiff cites no support for his argument that jobs that require "a short, on-the-job training period" fall only within the SVP 1 level.  In fact, this limitation appears consistent with an SVP rating of 2, which means anything beyond a short demonstration up to and including 1 month.  Accordingly, the undersigned recommends that the Court reject this argument.

### C. Number of Jobs

Next, Plaintiff argues that substantial evidence does not support the ALJ's

---

[6] "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles, *Appendix C: Components of the Definition Trailer*, § II (4th ed., rev. 1991).  An SVP of 1 means "short demonstration only."  *Id.*  An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*

8

finding that a significant number of jobs exist in the national economy that he could perform. (Doc. 21 at 20–23.) Specifically, Plaintiff argues that the VE's testimony regarding job numbers differs from the numbers actually shown on Job Browser Pro, the software that the VE testified she used as a source for the numbers she provided. (*Id.*) The undersigned recommends that this argument be rejected.

At the hearing, the VE identified three examples of jobs that fit within the ALJ's relevant hypothetical question:

> The first example is a mailroom clerk, *DOT* code 209.687-026, SVP 2, exertional level is light. National employment numbers, 60,000. Another example is a routing clerk, *DOT* code 222.587-038, SVP 2, exertional level is light. National employment numbers, 150,000. And, another is a package sorter, *DOT* code 222.687-022, SVP 2, exertional level is light. National employment numbers, 90,000.

(Tr. 52.) When asked the source of the job numbers she provided, the VE stated that she "utilize[s] the *Department of Labor* occupational employment statistics, as well as SkillTRAN Job Browser Pro software." (Tr. 54.)[7]

Plaintiff argues that Job Browser Pro's data shows that the following number of jobs exist in the national economy: 2,479 mailroom clerk jobs; 51,983 routing clerk jobs; and 41,640 package sorter jobs. (Doc. 21 at 21; *see* Tr. 283, 285, 288.)

---

[7] The Eleventh Circuit recently recognized the use of this SkillTRAN software as one method that a VE may use in estimating the number of jobs available in the national economy. *See Goode v. Comm'r of Soc. Sec.*, __ F.3d __, 2020 WL 4333473, at *6 (11th Cir. July 28, 2020).

9

To support her argument, Plaintiff provides what appears to be raw data derived from Job Browser Pro.  (Tr. 283, 285, 288.)

Regardless of whether the VE's estimate was exact, the number of jobs that Plaintiff argues exists in the national economy (over 96,000) is still more than sufficient to constitute a significant number.  For example, the Eleventh Circuit has upheld a finding that 23,800 jobs in the national economy constituted a significant number.  *See Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015); *Bailey v. Astrue*, 739 F. Supp. 2d 1365, 1382–83 (N.D. Ga. 2010) (collecting cases).  There is no doubt that the ALJ would have found more than 90,000 jobs in the national economy a significant number.  *See Bellamy v. Comm'r of Soc. Sec.*, 734 F. App'x 735, 738 (11th Cir. 2018) (holding that regardless of the alleged conflicts between the VE's testimony and the DOT regarding two jobs, substantial evidence supported the ALJ's finding that the plaintiff was not disabled because no conflict existed regarding a third job, of which there were 264,000 positions in the national economy).  Accordingly, to the extent there was any error, the undersigned recommends that it was harmless.  *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (applying the harmless error doctrine to social security cases); *see also NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766 n.6 (1969) (noting that where "remand would be an idle and useless formality," a reviewing court is not required to "convert judicial review of agency action into a ping-pong game").  Therefore, the undersigned recommends that the Court reject this argument.

### D. Plaintiff's RFC

Plaintiff next argues that the ALJ erred in failing to include a restriction against high performance/high demand work environments in Plaintiff's RFC based on the opinions of a non-examining state agency doctor, Dr. Kathryn Bell. (Doc. 21 at 23–25.) Regarding concentration and persistence, Dr. Bell opined that Plaintiff "would be limited in his ability to maintain CPP [concentration, persistence, and pace] under stresses of high performance/high demand work environment due to apparent difficulty with stress tolerance and intermittent symptom interruptions." (Tr. 92.) The other non-examining state agency psychological consultant, Dr. Judith Meyers, did not include this restriction in her opinions. (Tr. 79.)

In discussing the opinions of both doctors together, the ALJ stated:

> [T]he undersigned gives great weight to the State agency psychological consultants' opinions, reading the social limitations as consistent with restriction to occasional interaction with the public and coworkers (Exhibit 1A; Exhibit 3A). Circumstances such as the claimant's reported good control of ADHD with medication, inconsistencies in the mental status examinations, and the limited, conservative, and routine treatment the claimant received for his mental impairments suggest that the State agency consultants adequately accounted for the claimant's symptoms. More significant symptoms and limitations reported at the hearing level, such as at the claimant's August 2018 psychiatric evaluation and in his hearing testimony, are generally not corroborated by the remaining medical evidence, as discussed above. For these reasons, the State agency psychological consultants' opinions are generally consistent with the weight of the medical and other evidence and are given great weight.

(Tr. 26.)

11

Plaintiff argues that the ALJ erred in giving great weight to the opinions of Dr. Bell while omitting her opinion regarding high performance/high demand work in the RFC. (Doc. 21 at 23–25.) The undersigned recommends that the Court reject this argument. The ALJ considered Dr. Bell's and Dr. Meyers' opinions together, and both opinions are generally consistent with Plaintiff's RFC. Both Dr. Meyers and Dr. Bell summarized their findings by stating that Plaintiff "retains the ability to perform simple, repetitive tasks, with limited social contact." (Tr. 79, 93.) There was no requirement that the ALJ explicitly discuss or assign weight to every portion of their opinions or consider the two opinions separately. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'").

Moreover, the ALJ's RFC did not have to mirror the opinion of any one doctor, even if the opinion of that doctor was given great weight. *See Bailey v. Comm'r of Soc. Sec.*, Case No. 6:18-cv-1518-Orl-37LRH, 2019 WL 2425303, at *4 (M.D. Fla. May 23, 2019) ("The ALJ is not required to include every limitation in a medical opinion verbatim into the RFC determination simply because he assigned the opinion great weight."), report and recommendation adopted, Case No. 6:18-cv-1518-Orl-37LRH, 2019 WL 2423422 (M.D. Fla. June 10, 2019). Thus, the undersigned recommends that the ALJ did not err in giving great weight to the

opinions of the state agency psychological consultants and also finding that Plaintiff had the identified RFC.

### E. GED Reasoning Level

Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff could perform the jobs of mailroom clerk, routing clerk, and package sorter because those jobs require abilities that exceed Plaintiff's RFC. Specifically, Plaintiff argues that because the RFC limited Plaintiff to "simple, routine, and repetitive tasks," Plaintiff was limited to performing jobs that require a General Educational Development ("GED") reasoning level of 1, which the DOT equates in part to carrying out "simple one-or-two step instructions."[8] (Doc. 21 at 25–27; *see* Tr. 22–23.) Plaintiff argues further that although the VE testified that no conflict existed between her testimony and the DOT, this alleged discrepancy created an apparent conflict that the ALJ should have resolved. *See Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018) (holding that the ALJ had an affirmative duty to identify and resolve any apparent conflicts between the VE's testimony and the DOT). The undersigned recommends that the Court reject this argument.

---

[8] These reasoning levels are defined by the DOT as follows: "Level 1 - Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job"; "Level 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations"; "Level 3 - Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."

As previously noted, at the hearing the VE identified three examples of jobs that fit within the hypothetical question posed by the ALJ: mailroom clerk, routing clerk, and package sorter.  (Tr. 52.)  The mailroom clerk job requires a GED reasoning level of 3 while both the routing clerk and package sorter jobs require a GED reasoning level of 2.  *See* DOT 209.687-026, 1991 WL 671813 (mail clerk; reasoning level three); DOT 222.587-038, 1991 WL 672123 (routing clerk; reasoning level two); DOT 222.687-022, 1991 WL 6721233 (package sorter; reasoning level two).

Although the Eleventh Circuit has not yet decided whether a limitation to "simple, routine, and repetitive" work is consistent with a job requiring a GED reasoning level of 3, it recently indicated that jobs with a GED reasoning level of 2 are consistent with such a limitation.  *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020).  In *Valdez*, the plaintiff argued that the ALJ erred in finding that he could perform a job with a GED reasoning level of 3 because the ALJ limited the plaintiff to simple, routine, and repetitive tasks.  *Id.* at 1007–08.  The court went on to state that:

> We haven't decided the issue Valdez raises here—whether a limitation to simple, routine, and repetitive work is inconsistent with a job that requires a reasoning level of three.  But it is unnecessary to decide it because, even if Valdez was not able to work as an order clerk, the ALJ still concluded that he could perform two other jobs: lens inserter, which has a reasoning level of one, *see* DOT, 713.687-026, and lens-block gauger, which has a reasoning level of two, *see id.* 716.687-030.  Valdez has not argued that these jobs are inconsistent with his residual functional capacity, *and they are not*.  Thus, any

14

> error pertaining to the ALJ's conclusion that he could work as an order clerk is harmless because there are other jobs he is qualified to do even in light of his residual functional capacity, age, education, and work experience.

*Id.* at 1009 (emphasis added). Furthermore, a court in this district recently recognized that *Valdez* "determines that no apparent conflict [with the DOT] exists between a limitation to a 'simple' task and a finding that the petitioner can perform a job with a reasoning level of 2." *Fletcher v. Saul*, Case No. 8:19-cv-1476-T-23AAS, 2020 WL 4188210, at *1 (M.D. Fla. July 21, 2020) (rejecting the argument that this statement in *Valdez* was dicta).

Accordingly, even if the mailroom clerk position exceeds Plaintiff's RFC, the undersigned recommends that, even using the job numbers provided by Plaintiff, a significant number of jobs still exists in the national economy that Plaintiff could perform based on the routing clerk and package sorter positions (more than 93,000). Therefore, the undersigned recommends that the Court reject this argument.

### V.    Conclusion

The Court does not make independent factual determinations, reweigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence.

Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED**.

2. The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** in Jacksonville, Florida, on August 19, 2020.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable G. Kendall Sharp
Senior United States District Judge

Counsel of Record